## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MARSHALL CARO and INDII.com USE, LLC,  :
                                :
           Petitioners,         :      CIVIL ACTION NO.
                                :      12-01066 (CSH)
     v.                        :
                                :
FIDELITY BROKERAGE SERVICES LLC,  :
                                :
           Respondent.       :      October 1, 2012

## RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION TO PETITION TO VACATE ARBITRATION AWARD AND IN SUPPORT OF ITS CROSS-MOTION TO CONFIRM AWARD

## **Table of Contents**

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND .................................................................................. 2

ARGUMENT ........................................................................................................ 5

POINT I.  PETITIONERS' REQUEST TO VACATE THE ARBITRATION AWARD
SHOULD BE DENIED ........................................................................ 5

    A.  Statutory and Manifest Disregard Grounds are Extremely Limited and
Petitioners Have Burden of Showing They Met Them ........................... 5

    B.  No Grounds Exist to Vacate or Modify under 9 U.S.C. § 10(a)(2) – Evident
Partiality .......................................................................................... 7

        1.  Petitioners have failed to establish that there was any "evident partiality or
corruption in the arbitrators" .......................................................... 7

        2.  FINRA's appointment of the Chair was proper and accepted by Petitioners ... 8

    C.  No Grounds Exist to Vacate or Modify under 9 U.S.C. § 10(a)(3) – Arbitrator
Misconduct ....................................................................................... 9

        1.  Calling witnesses is within the discretion of Panel – Petitioners' desire to
call Fidelity's counsel was properly rejected ................................... 10

        2.  The arbitration Panel determines objections to evidence – Petitioners,
*pro se*, were properly contained .................................................... 11

        3.  The arbitration Panel is empowered to determine discovery issues .............. 12

    D.  No Grounds Exist to Vacate or Modify under 9 U.S.C. § 10(a)(4) –
Exceeded Powers ............................................................................. 13

        1.  The Award of attorneys' fees was proper – Petitioners had requested
fees, and having done so, cannot deprive the Panel of power to award
them.............................................................................................. 13

    E.  No Grounds Exist to Vacate or Modify under Manifest Disregard of the Law.... 15

        1.  The Award was not in manifest disregard of law – CPLR has "reason to
believe test" for restricting funds .................................................. 15

        2.  The Second Restraining Notice was properly issued – leave to serve it
was granted .................................................................................. 17

        3.  The Award was consistent with the parties' arbitration agreement –
Fidelity was not bound to arbitrate the interpleader claim ............................ 18

POINT II.  FIDELITY'S CROSS-MOTION TO CONFIRM THE ARBITRATION AWARD
SHOULD BE GRANTED .................................................................. 19

CONCLUSION.................................................................................................. 21

### Table of Authorities

Cases

Alyeska Pipeline Service Co. v. Wilderness Society, 95 S. Ct. 1612 (1975) ............................... 15

Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, 492 F.3d 132
    (2d Cir. 2007) ...................................................................................................................... 8

Aspen Indus., Inc. v. Marine Midland Bank, 52 N.Y.2d 575 (1981). .......................................... 15

AT&T Corp. v. Tyco Telecomms., Inc., 255 F. Supp. 2d 294 (S.D.N.Y. 2003) ...................... 9-10

City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114 (2d Cir. 2011) ............................. 1

D.H. Blair & Co. v. Gottdiener, 462 F.3d 95 (2d Cir. 2006) ............................................. 6, 19, 20

DeRosa v. Nat'l Envelope Corp., 595 F.3d 99 (2d Cir. 2010) ...................................................... 19

Digitelcom, LTD. v. Tele2 Sverige AB, 2012 U.S. Dist. LEXIS 105896 (S.D.N.Y. 2012) ... 19-20

Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383 (2d Cir. 2003) .......... 6, 7

Fairchild Corp. v. Alcoa, Inc., 510 F. Supp. 2d 280 (S.D.N.Y. 2007) ........................................ 11

Fellus v. Sterne, Agee & Leach, Inc., 783 F. Supp. 2d 612 (S.D.N.Y. 2011) ............................. 13

Fidelity Brokerage Servs. LLC v. Bank of China, 192 F. Supp. 2d 173 (S.D.N.Y. 2002) ........... 16

Folkways Music Publishers, Inc. v. Weiss, 989 F.2d 108, 111 (2d Cir. 1993) ....................... 6, 20

Freedom Investors Corp. v. Kahal Shomrei Hadath, 2012 U.S. Dist. LEXIS 15129
    (S.D.N.Y. 2012) ................................................................................................................... 7

Lattanzio v. COMTA, 481 F.3d 137 (2d Cir. 2007) ..................................................................... 1

Lobaito v. Chase Bank, 2012 U.S. Dist. LEXIS 107344 (S.D.N.Y. 2012) ................................... 1

Mandell v. Reeve, 2011 U.S. Dist. LEXIS 114804 (S.D.N.Y. 2011) ........................................... 14

Matza v. Oshman, Helfenstein & Matza, 823 N.Y.S.2d 47 (1st Dept. 2006) ............................... 14

Merrill Lynch v. Whitney, 2009 U.S. Dist. LEXIS 59101 (N.D. Okla. 2009) ............................. 18

Morgan Stanley v. The Core Fund, 2012 U.S. Dist. LEXIS 115760 (M.D. Fla. 2012) ............... 14

ii

O.R. Securities, Inc. v. Professional Planning Associates, Inc., 857 F.2d 742 (11th Cir. 1988).... 1

Polin v. Kellwood Co., 103 F. Supp. 2d 238 (S.D.N.Y. 2000)..................................................... 11

Prudential Home Mortgage Co., Inc. v. Neildan Construction Corp., 618 N.Y.S.2d 108
    (2nd Dept. 1994) ........................................................................................................ 19

Rai v. Barclays Capital, Inc., 739 F. Supp. 2d 364 (S.D.N.Y. 2010) ...................................... 9, 10

Sanford Home for Adults v. Local 6, IFHP, 665 F. Supp. 312 (S.D.N.Y. 1987). .......................... 8

Schulman v. North Fork Bank, 2009 N.Y. Misc. LEXIS 4597 (Sup. Ct. New York Co. 2009).. 16

Schwartz v. Merrill Lynch & Co., Inc., 665 F.3d 444 (2d Cir. 2011) ........................................... 6

STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) L.L.C., 648 F.3d 68
    (2d Cir. 2011)........................................................................................................... 6-7, 20

Stolt-Nielson S.A. v. Animal Feeds Int'l Corp., 130 S. Ct. 1758 (2010)................................. 6, 13

Supreme Oil Co., Inc. v. Abondolo, 568 F. Supp. 2d 401 (S.D.N.Y. 2008) ............................... 12

T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc. 592 F.3d 329 (2d Cir. 2010) ....................... 6

Telenor Mobile Communications AS v. Storm LLC, 2007 WL 3274699 (S.D.N.Y. 2007)........ 20

Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16 (2d Cir. 1997) ........................................... 10, 12

Tittle v. Enron Corp., 463 F.3d 410 (5th Cir. 2006).............................................................. 18, 19

Todd Shipyards Corp. v. Cunard Line, 943 F.2d 1056 (9th Cir. 1991)....................................... 14

U.S. Offshore, Inc. v. Seabulk Offshore, Ltd., 753 F. Supp. 86 (S.D.N.Y. 1990) ...................... 14

U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd., 188 F. Supp. 2d 358 (S.D.N.Y. 2002) .................... 1

Wallace v. Buttar, 378 F.3d 182 (2d Cir. 2004) ........................................................................... 6

Statutes

9 U.S.C. § 10.................................................................................................................. passim

9 U.S.C. § 6..................................................................................................................... 1

9 U.S.C. § 9................................................................................................................. 1, 21

A/75190678.3

Rules

CPLR 5222 .................................................................................................. 15, 17

FINRA 12212 ................................................................................................... 14

FINRA 12409 ................................................................................................... 12

FINRA 12503 ................................................................................................... 12

FINRA 12604 ................................................................................................... 11

A/75190678.3

## PRELIMINARY STATEMENT

Respondent Fidelity Brokerage Services LLC ("Fidelity") submits this Memorandum of Law in Opposition to the Complaint and Petition of Marshall Caro ("Caro") and Indii.com USE, LLC[1] ("Indii") (collectively "Petitioners") to Vacate Arbitration Award and in Support of its Cross-Motion to Confirm Arbitration Award.  In their Complaint and Petition[2], Petitioners assert that the arbitration award entered on April 24 2012 (the "Award") in favor of Fidelity and against Petitioners by a Financial Industry Regulatory Authority (FINRA) arbitration panel in Indii.com USE, LLC and Marshall Caro vs. Fidelity Brokerage Services LLC, FINRA Case No. 11-00298 (the "Arbitration") must be vacated or modified because the Panel "did not follow the FINRA rules and exceeded their powers...[t]he award rendered is in manifest disregard of the terms of the arbitration agreement...[and] [t]he award rendered is in manifest disregard of the law." (Complaint, pg. 8.)  Because Petitioners have failed to meet the requisite standards set forth under 9 U.S.C. § 10 and failed to establish that the Panel intentionally defied clear and plainly applicable law, their Petition must be denied.  Upon denial of the Petition, this Court should enter judgment confirming the Award pursuant to 9 U.S.C. § 9.

---

[1] The Petition of Indii should be denied for the additional reason that Caro is not allowed to file it on Indii's behalf.  Indii, as a Delaware Limited Liability Company, is not permitted to appear *pro se* in this action as an LLC, and Caro, as a layperson, may not represent a separate legal entity, such as Indii. See, e.g., City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 132 (2d Cir. 2011) ("a limited liability company...cannot appear except through counsel"); Lattanzio v. COMTA, 481 F.3d 137, 140 (2d Cir. 2007) ("Because both a partnership and a corporation must appear through licensed counsel, and because a limited liability company is a hybrid of the partnership and corporate forms..., a limited liability company also may appear in federal court only through a licensed attorney").  Caro is presumably aware of this requirement since in the prior federal and state court matters in which Caro was *pro se*, Indii was represented by counsel.

[2] Petitioners have styled their request for vacatur as a "Complaint and Petition."  Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 6, a party seeking to vacate an arbitration award must proceed by *motion* to the court, rather than a complaint or petition. 9 U.S.C. § 6, *Application heard as motion* ("Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided"); See also U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd., 188 F. Supp. 2d 358, 363 (S.D.N.Y. 2002) citing O.R. Sec., Inc. v. Prof'l Planning Assocs., Inc., 857 F.2d 742, 745 (11th Cir. 1988) ("the statutes and rules do not permit a party to initiate a challenge to an arbitration award by filing a complaint or an Application to Vacate Arbitration Award").  While Respondent notes this procedural deficiency in Petitioners' action, it also acknowledges that such deficiency has been excused by the court in prior actions, wherein it has considered a complaint as a motion to vacate. Lobaito v. Chase Bank, 2012 U.S. Dist. LEXIS 107344 (S.D.N.Y. 2012). Further, it is "proper procedural posture" to respond to Petitioners' Complaint and Petition with a cross-motion to confirm the award. U.S. Ship Mgmt., Inc. at 363.

1

## FACTUAL BACKGROUND

The facts and documents relevant to Petitioners' Complaint and Petition and Fidelity's Cross-Motion are set forth and annexed to the affidavit of Michael G. Shannon, Esq., sworn to September 26, 2012 ("Shannon Affidavit"), submitted herewith, and summarized as follows.

Pre-arbitration Proceedings

The subject arbitration had its origin in efforts by William Rothfarb ("Rothfarb") to collect a judgment he had obtained against Caro and others following a trial in the New York Supreme Court. Although the judgment had been entered in 1995 (Exhibit 1 to Shannon Affidavit), as of January 2010, no part of that judgment had been satisfied by Caro and it had not been set aside or modified. In July 2010, in attempt to collect on the judgment from Caro, Rothfarb's counsel served a restraining notice and information subpoena (Restraining Notice) (Exhibit 6 to Shannon Affidavit) on Fidelity – Caro and Indii both had brokerage accounts at Fidelity.

Upon receipt of the Restraining Notice Fidelity restrained an account in the name of Caro and an account in the name of Indii because Fidelity had reason to believe Caro "had an interest" in these accounts. Among other things, Caro was 60% owner of Indii and the sole signatory on Indii's account and Indii's account was almost entirely funded with assets Caro had transferred from his personal account. When he learned of the restraint, Caro demanded that Fidelity lift the restraint on the Indii account. At the same time, Fidelity received threats from Rothfarb's attorney threatening Fidelity with contempt if it did release the restraint and received a temporary restraining order from the New York Supreme Court and then a second restraining notice, both of which specifically directed Fidelity to continue to restrain the Indii account. (Shannon Affidavit ¶¶ 7-8.)

Faced with these conflicting demands, threats, and directions, and rather than disobey the restraining notice, Fidelity filed an interpleader action in federal court and deposited the proceeds of the disputed account with the court to allow the Petitioners and Rothfarb to resolve their dispute while allowing Fidelity as a neutral party to remove itself from the controversy. Petitioners objected to the interpleader and moved to dismiss it. The federal court denied Petitioners' motion, discharged Fidelity from the case and awarded Fidelity attorneys' fees to be paid by the Petitioners and Rothfarb. Caro then paid the judgment amount ($491,767.78) to Rothfarb in November 2010 and the Court released the funds that had been deposited. (Shannon Affidavit ¶¶ 9-13.)[3]

<u>The Arbitration Claim</u>

In January 2011, Caro and Indii filed a FINRA Arbitration Claim against Fidelity. The Statement of Claim (Exhibit 19 to Shannon Affidavit) rehashed the allegations regarding Rothfarb's issuance of the Restraining Notice. The Claim also alleged (contrary to the transcript of the proceedings in the New York State Court) (see Exhibit 11 to the Shannon Affidavit, pg. 11) "that Justice Gische had not given leave to Rothfarb to serve the second restraining Notice" and alleged that it "had no legal effect." The Claim further asserted that Fidelity had "illegally" restrained the account pursuant to an *ex parte* Order from the federal court when Fidelity was supposedly obliged to "forego all lawsuits" and to arbitrate all controversies because of the arbitration provisions of the account documents.

Caro and Indii subsequently served an Amended Statement of Claim (Exhibit 20 to the Shannon Affidavit) which repeated the allegations regarding the restraint on the Indii account

---

[3] In December 2010, Fidelity moved for attorneys' fees and costs, and over Caro's objection, the District Court granted Fidelity $41,538.48 in attorneys' fees and $293.01 in costs (assessed one-third each against Caro, Indii and Rothfarb). (Exhibit 17 to Shannon Affidavit.) The Court also denied Caro's request that the attorneys' fee order be stayed pending Caro's pursuit of an arbitration claim against Fidelity. (Exhibit 18 to the Shannon Affidavit.) Caro and Indii subsequently paid the fees. (Shannon Affidavit ¶ 13.)

and added allegations that Fidelity had improperly divulged confidential information about Caro in connection with documents which Fidelity produced to Caro's adversary in the litigation in Connecticut regarding his wife's estate. *Both the original claim and the amended arbitration claim specifically asserted claims for attorneys' fees.*

Arbitration Proceedings

Both Fidelity and Petitioners submitted pre-hearing briefs and the evidentiary hearings were held at FINRA's offices in Manhattan on March 13, 14, 15 and 28, 2012. Caro gave an opening statement for Petitioners. On their direct case, Petitioners presented five witnesses.[4] During the examinations of witnesses, the parties introduced voluminous exhibits for the Panel's consideration. (Shannon Affidavit ¶¶ 21-22.) Following the conclusion of Caro and Indii's direct case, the parties rested and Fidelity combined its motion to dismiss with its closing argument and requested attorneys' fees and sanctions in part because of Caro's repeated instances of dishonesty throughout the proceedings and the frivolousness of Caro and Indii's claims. Fidelity submitted an affidavit in support of that request. (Exhibit 29 to the Shannon Affidavit.)

Arbitration Award

In an unanimous Award (Exhibit 2 to the Complaint) dated April 24, 2012, the Panel denied all of Petitioners' claims in their entirety, awarded Fidelity $30,000 in attorneys' fees and assessed all hearing session fees against Petitioners. In awarding the attorneys' fees, the Panel stated in the Award that it was "pursuant to both parties' request for attorneys' fees in their pleadings, during the hearing and in their post hearing submissions."

---

[4] Petitioners' witnesses included: 1) Caro; 2) David Carlson (a law professor offered as an expert); 3) Nicholas Davidige (offered as a damages expert); 4) Christian Jeri (the Fidelity employee who had initially acted on the Restraining Notice and placed the restraint on the Indii account and who had communications with Caro and Rothfarb about it) and 5) Katherine Ho (Director of Fidelity's Legal Operations Group and Mr. Jeri's superior and the person who made the decision to keep the Indii account restrained).

4

<u>Complaint and Petition to Vacate the Award</u>

Petitioners' "Complaint and Petition" purports to assert in very conclusory fashion a variety of grounds on which to vacate or modify the Award: "The panel exceeded the powers granted to them [] by awarding attorney fees to Fidelity...refused to hear evidence pertinent to the dispute, prevented relevant discovery and testimony, denied [Petitioners'] objections without hearing them, incorrectly stated New York law and procedure and dismissed expert testimony...[and] demonstrated clear bias against pro se litigants and law professors and manifest disregard of the law." (Complaint, pg. 2.)

**ARGUMENT**

**POINT I.   PETITIONERS' REQUEST TO VACATE THE ARBITRATION AWARD SHOULD BE DENIED**

A.   <u>Statutory and Manifest Disregard Grounds are Extremely Limited and Petitioners Have Burden of Showing They Met Them</u>

The standard for vacating an arbitration award is determined by Section 10(a) of the FAA, 9 U.S.C. § 10(a), which provides the following narrow, enumerated grounds upon which a district court may make an order vacating an arbitration award: (1) where the award was procured by corruption, fraud or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.[5]

---

[5] Liberally reading Petitioners' claims in their Complaint and Petition, Petitioners appear to seek statutory vacatur under subsections (a)(2-4) of Section 10. Fidelity responds to each of these sections in Parts B, C, and D below.

5

"A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006).  The party moving to vacate an award bears "the heavy burden of showing that the award falls within [this] very narrow set of circumstances delineated by statute...." Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004); Folkways Music Publishers, Inc. v. Weiss, 989 F.2d 108, 111 (2d Cir. 1993) (In evaluating whether an arbitration award is subject to vacatur, courts undertake a "very limited review.").  Further, it is well established "that courts must grant an arbitration panel's decision great deference." Wallace at 189.  Thus, a party seeking vacatur of an arbitrator's decision "must clear a high hurdle." Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp., 130 S. Ct. 1758, 1767 (2010).

In addition to these limited statutory bases, the Second Circuit has also recognized a narrow doctrine derived from the statutory grounds, which holds that an arbitration award may also be vacated where it is in "manifest disregard of the law." T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 339 (2d Cir. 2010); See also Schwartz v. Merrill Lynch & Co., Inc., 665 F.3d 444, 451 (2d Cir. 2011) ("as judicial gloss on these specific grounds for vacatur of arbitration awards, [the Second Circuit] ha[s] held that the court may set aside an arbitration award if it was rendered in 'manifest disregard of the law'").

However, "awards are vacated on grounds of manifest disregard only in those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent." T.Co Metals, LLC at 339; Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 389, 393 (2d Cir. 2003) (Manifest disregard is a "doctrine of last resort").  The court's review of manifest disregard is also "'highly deferential' to the arbitrators, and relief on such a claim is therefore 'rare.'" STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) L.L.C.,

6

648 F.3d 68, 78 (2d Cir. 2011).  A court "will not vacate an award because of 'a simple error in law or a failure by the arbitrators to understand or apply it' but only when a party clearly demonstrates 'that the panel intentionally defied the law.'"  Duferco at 393.  Where, as here, the arbitrators do not explain the reason for their decision, it should be upheld if the court "can discern any valid ground for it."  Id.

B.   No Grounds Exist to Vacate or Modify under 9 U.S.C. § 10(a)(2) – Evident Partiality

   1.   **Petitioners have failed to establish that there was any "evident partiality or corruption in the arbitrators"**

   Petitioners assert that the Panel "demonstrated clear bias against pro se litigants and law professors."  In support of this conclusion, Petitioners merely allege that the Chairperson "expressed considerable skepticism about...pro se litigants" and "dismissed the testimony of [Petitioners'] expert witness, David G. Carlson, Esq., professor of law at Benjamin N. Cardozo School of Law...stating, 'I don't need a law professor to read the law to me.'"  (Complaint, pgs. 5-6.)  To the extent these wholly unsupported claims – as noted by Petitioners in their Complaint, Professor Carlson was permitted to testify to his opinions during the hearing regarding both the restraining notices and the interpleader lawsuit – seek to establish grounds for vacatur under 9 U.S.C. § 10(a)(2), Petitioners have failed to establish that there was any "evident partiality or corruption in the arbitrators" and thus, fail to meet the requirements of the statute.

   Under § 10(a)(2) of the FAA, a court may vacate an arbitration award "where there was evident partiality or corruption in the arbitrators, or either of them[.]"  9 U.S.C. § 10(a)(2).  It is well-settled in this circuit that "evident partiality" involves more than just the "appearance of bias."  Freedom Investors Corp. v. Kahal Shomrei Hadath, No. 11 Civ. 5975 (DLC), 2012 U.S. Dist. LEXIS 15129, at *11-12 (S.D.N.Y. Feb. 7, 2012).  "[A]n arbitrator is disqualified only when a reasonable person, considering all of the circumstances, would have to conclude that an

arbitrator was partial to one side." Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S., 492 F.3d 132, 137 (2d Cir. 2007). To set aside an award for arbitrator partiality, "the interest or bias [of the arbitrator] . . . must be direct, definite and capable of demonstration rather than remote, uncertain, or speculative" and the burden of proof rests on the party raising the claim of bias. Sanford Home for Adults v. Local 6, IFHP, 665 F. Supp. 312, 316, 320 (S.D.N.Y. 1987).

Nearly all of the cases dealing with § 10(a)(2) relate to undisclosed interests or relationships between the arbitrators and one of the parties. Here, Petitioners have alleged no relationship or interest that would even suggest bias or impartiality; instead, Petitioners ask the Court to infer partiality from the mere fact that the Chairperson − according to Petitioners − "expressed considerable skepticism about the validity of the claims and of pro se litigants." Clearly, such rank speculation is not enough to establish grounds to vacate an arbitration award on "evident partiality" grounds.[6]

### 2.  FINRA's appointment of the Chair was proper and accepted by Petitioners

Petitioners' assertion that the appointment of the replacement Chairperson was not in accordance with FINRA's "Short List rule" is not only false but is an attempt to mislead the Court. Given the proximity of the evidentiary hearing, and in accordance with FINRA arbitration procedures, the parties were given the *option* of adjourning the hearing and following the short list selection method (to receive a short list of prospective replacement candidates from which to select a new Chairperson) or of proceeding with the hearing as scheduled and having FINRA appoint a replacement who would then only be subject to a challenge for cause. (See

---

[6] Petitioners also fail to establish evident partiality by the Panel as against Petitioners' expert witness, Professor Carlson, whose testimony was clearly discredited. For example, on cross examination, Professor Carlson admitted that he had published little that was germane to the subject of his testimony, he made several misstatements regarding the requirements of the pertinent section of the CPLR which governed restraining notices, and on the second day of his cross examination testimony, he announced that he wanted to correct or take back what he had said on cross examination on the first day. (Shannon Affidavit ¶ 23.) There was an ample basis on which to reject the Professor's views having nothing to do with "bias."

8

Exhibit 24 to the Shannon Affidavit.)  The parties elected the latter and Chairperson Binckes was appointed as Chair.  (Shannon Affidavit ¶ 17.)

At the onset of the hearing, and after Fidelity's counsel made an additional disclosure of a prior contact with the Chairperson,[7] Chairperson Binckes asked the parties if they accepted him as the Chair and Caro stated affirmatively that Binckes and the entire Panel were acceptable and thus Petitioners explicitly agreed to proceed with the newly appointed Chair.  (Shannon Affidavit ¶ 19.)

The Second Circuit "precludes attacks on the qualifications of arbitrators on grounds previously known but not raised until after an award has been rendered."  Rai v. Barclays Capital, Inc., 739 F. Supp. 2d 364, 371 (S.D.N.Y. 2010) ("Where a party has knowledge of facts possibly indicating bias or partiality on the part of the arbitrator he cannot remain silent and later object to the award of the arbitrators on that ground.  His silence constitutes a waiver of the objection.").  Here, not only did FINRA follow its rules and procedures, but Petitioners waived any objection associated with the Chairperson's appointment by accepting him and by failing to timely raise this issue.

C.    No Grounds Exist to Vacate or Modify under 9 U.S.C. § 10(a)(3) – Arbitrator Misconduct

FAA section 10(a)(3) provides grounds for vacating an arbitration award "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy."  This provision has been narrowly construed so as not to impinge on the broad discretion afforded to arbitrators to decide what evidence should be presented. Rai at 371; AT&T Corp. v. Tyco Telecomms., Inc., 255 F. Supp. 2d 294, 303 (S.D.N.Y. 2003) (Arbitrators enjoy "broad discretion" on whether to hear evidence and do not need to allow parties to "present every

---

[7] The Chairperson and Fidelity's counsel had both served on an arbitration panel several years earlier.  The Chairperson advised that he had no recollection of it or of Mr. Shannon.  (Shannon Affidavit ¶ 19.)

9

piece of relevant evidence."). The arbitrators need only hear "enough evidence to make an informed decision." Id. Additionally, "courts have interpreted section 10(a)(3) to mean that except where fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review." Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20 (2d Cir. 1997); AT&T Corp. at 303 (to vacate an award on this ground, the "misconduct must amount to a denial of fundamental fairness of the arbitration proceeding."). Here, Petitioners do not even describe material evidence much less demonstrate that it was improperly excluded or that it would or could have made a difference.

1.    **Calling witnesses is within the discretion of Panel – Petitioners' desire to call Fidelity's counsel was properly rejected**

Petitioners claim that the Chairperson wrongfully ruled that Petitioners could not call Fidelity's outside counsel as witnesses. Specifically, Petitioners assert that they should have been allowed to take testimony from Fidelity's counsel and allowed to pierce any attorney-client privileges regarding the filing of the federal interpleader complaint. After hearing Petitioners on why they wished to call the attorneys and what probative evidence Petitioners hoped to adduce, the Panel declined to order that the attorneys testify.

That ruling was neither wrong nor beyond the Panel's discretion and there is no showing that it prejudiced Petitioners' rights. Petitioners did not (and do not) show important or substantive facts for which the testimony was sought. Nor did Petitioners show a strong necessity for the attorneys' testimony, which would outweigh the real danger that the subject matter would encompass attorney-client and work-product privileged communications. Beyond that, determinations regarding witness appearances and witness testimony at hearing is at the discretion of the Panel and not supportable grounds for vacatur. Rai at 371 ("Arbitrators must be given discretion to determine whether additional evidence is necessary or would simply prolong

10

the proceedings"); See also Fairchild Corp. v. Alcoa, Inc., 510 F. Supp. 2d 280, 285 (S.D.N.Y. 2007) ("[A]n arbitrator has discretion to admit or reject evidence and determine what materials may be cumulative or irrelevant").

In any event, there was no material or relevant information for which counsels' testimony was necessary and Petitioners' desire to call Fidelity's counsel was properly rejected. Petitioners had the opportunity to reference pleadings or other litigation documents filed by the lawyers and Petitioners did not need the lawyers as witnesses for that purpose. Petitioners present no valid reason whatsoever why Fidelity's counsel should have been forced to testify and there is none.

### 2. The arbitration Panel determines objections to evidence – Petitioners, *pro se*, were properly contained

The Complaint claims, albeit rather generically and without presenting a single erroneous ruling as an example, that the Panel peremptorily overruled Petitioners' objections. Such complaint should be summarily denied as Courts do not intervene upon the broad discretion afforded to arbitrators to decide what evidence[8] should be presented. See Rai at 371 (though "an arbitrator 'must give each of the parties to the dispute an adequate opportunity to present its evidence and arguments,'" he is "not required to hear all the evidence proffered by a party"); Polin v. Kellwood Co., 103 F. Supp. 2d 238, 261 (S.D.N.Y. 2000) ("an arbitrator is not required to hear all evidence proffered, because an arbitration panel 'need not compromise speed and efficiency, the very goals of arbitration, by allowing cumulative evidence.'").

Petitioners have the burden of proving entitlement to vacatur and that is certainly not met by a general assertion that some objections – over the course of a four-day hearing – were decided against Petitioners or that as *pro se* litigants the Panel contained some of their misguided arguments.

---

[8] FINRA rules provide that "[t]he panel will decide what evidence to admit. The panel is not required to follow state or federal rules of evidence." Rule 12604 (a) *Evidence*, FINRA Code of Arbitration Procedure.

A/75190678.3

**3.     The arbitration Panel is empowered to determine discovery issues**

The Complaint claims that the Chairperson failed to rule on Petitioners' motions made prior to the final hearing.  More precisely, during preliminary matters the first day of hearing, the Chairperson indicated that discovery issues (such as document preclusion and determining who might be called as witnesses) would be resolved during the course of the hearing as the specific issues might arise.  (Shannon Affidavit ¶ 20.)  Such arbitrator conduct is common practice in FINRA arbitrations and in accord with FINRA rules of procedure, which provides that the Panel determines discovery motions and has discretion in doing so.  See Rule 12503(a)(d) *Authority to Decide Motions* ("Discovery-related motions are decided by one arbitrator, generally the chairperson"); Rule 12409 *Jurisdiction of Panel and Authority to Interpret the Code* ("The panel has the authority to interpret and determine the applicability of all provisions under the Code. Such interpretations are final and binding upon the parties").

Additionally, deferring a ruling on the motions does not support vacatur of an award.  As indicated above, the arbitration Panel has "great latitude to determine the procedures governing their proceedings and to restrict or control evidentiary proceedings."  Supreme Oil Co., Inc. v. Abondolo, 568 F. Supp. 2d 401, 408 (S.D.N.Y. 2008).  An arbitrator "need not follow all the niceties observed by the federal courts."  Tempo Shain Corp. at 20.  An arbitrator must only "give each of the parties to the dispute an adequate opportunity to present its evidence and argument."  Id.  The federal courts may consider solely whether "the procedure was fundamentally unfair," and, if not, whether the error "was made in bad faith or was so gross as to amount to affirmative misconduct."  Id.  By deferring certain discovery and evidentiary rulings until the hearing at which the specific issues might or might not arise is in no way improper or

A/75190678.3

fundamentally unfair to Petitioners, and Petitioners have provided no evidence that such ruling was made in bad faith, or that it even had any impact.[9]

D.   No Grounds Exist to Vacate or Modify under 9 U.S.C. § 10(a)(4) – Exceeded Powers

FAA section 10(a)(4) provides for vacatur "where the arbitrators exceeded their powers." The Second Circuit has "consistently accorded the narrowest of readings" for vacatur under section 10(a)(4), and the proper inquiry is "whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." Stolt-Nielsen S.A. at 1780; Fellus v. Sterne, Agee & Leach, Inc., 783 F. Supp. 2d 612, 618 (S.D.N.Y. 2011).

**1.   The Award of attorneys' fees was proper – Petitioners had requested fees, and having done so, cannot deprive the Panel of power to award them**

Petitioners allege that attorneys' fees were awarded in violation of FINRA rules because only Fidelity had requested attorneys' fees, but the fact is that in their Statement of Claim and Amended Statement of Claim (as well as their prehearing brief) Petitioners specifically requested attorneys' fees.[10]   Such was confirmed in the Arbitration Award itself, in which the Panel stated that the award of attorneys' fees was "pursuant to both parties' request for attorneys' fees in their pleadings, during the hearing and in their post hearing submissions."

As cited in Petitioners' Complaint (see pg. 55 of Exhibit 12 to Complaint), a FINRA arbitration panel has authority to grant attorneys' fees where "all of the parties request or agree to such fees." FINRA Arbitrator's Guide (February 2012) at pg. 55, *Attorneys' Fees*. This FINRA

---

[9] In fact, one of the motions deferred was *Fidelity's* motion to strike Petitioners' claims and to sanction Petitioners for their repeated non-compliance with the Chairperson's prior discovery order.

[10] In addition, prior to the evidentiary hearings in the arbitration, both sides engaged in discovery, exchanged considerable materials and encountered discovery disputes. On February 5, 2012, as had been ordered by the Chairperson, Petitioners supplemented a discovery response regarding their damages claims and specifically listed among their damage claim components "Attorneys Fees, estimated to be in excess of $150,000." (Exhibit 21 to the Shannon Affidavit.) A request for recovery of all "costs incurred by Claimants including legal fees" was repeated in Petitioners' pre-hearing brief. (Exhibit 22 to the Shannon Affidavit.)

13

rule is also supported in applicable law.  See, e.g., Matza v. Oshman, Helfenstein & Matza, 823 N.Y.S.2d 47 (1st Dep't 2006) (attorneys' fees may be awarded in arbitration absent provision in a statute or the agreement to arbitrate if requested by the parties during the arbitration process); U.S. Offshore, Inc. v. Seabulk Offshore, Ltd., 753 F. Supp. 86, 92 (S.D.N.Y. 1990) ("If both parties [seek] attorney's fees...then both parties agree[] *pro tanto* to submit that issue to arbitration, and the arbitrators ha[ve] jurisdiction to consider that issue and to award them"); See also Morgan Stanley & Co., LLC v. The Core Fund, No. 8:11-cv-2469-T-23TBM, 2012 U.S. Dist. LEXIS 115760 (M.D. Fla. July 11, 2012) (opposing requests in the parties' pleadings for attorneys' fees constitutes an agreement to submit that issue to the panel).  Petitioners had expressly requested fees, and having done so, cannot deprive the Panel of its authority to award them without subsequently asserting an "unequivocal, explicit, and mutual" request of the parties to withdraw the attorneys' fees issue from arbitration, which Petitioners did not do.  See Morgan Stanley at 13 (the arbitrators' authority to award attorneys' fees by mutual submission of the parties "is neither limited nor withdrawn by an ambiguous, unilateral, and stray assertion.").

Furthermore, Fidelity also requested fees as sanctions for Petitioners' assertion of frivolous claims in the arbitration, which the Panel is permitted to order under the FINRA Code of Arbitration Procedure.  See FINRA Rule 12212, *Sanctions* ("The panel may sanction a party for failure to comply with any provision in the Code, or any order of the panel or single arbitrator authorized to act on behalf of the panel...sanctions may include, but are not limited to...Assessing attorneys' fees, costs and expenses.").[11]  Thus, the award of attorneys' fees was proper pursuant to FINRA rules and applicable law, and should be confirmed.

---

[11] The Second Circuit has recognized that an arbitrator has in general the inherent authority to award attorney's fees as sanctions. Mandell v. Reeve, No. 10 Civ. 6530 (RJS), 2011 U.S. Dist. LEXIS 114804, at *36 (S.D.N.Y. Oct. 4, 2011) ("Pursuant to its inherent equitable powers . . . a court may award attorney's fees when the opposing counsel acts 'in bad faith, vexatiously, wantonly, or for oppressive reasons'"); See also Todd Shipyards Corp. v. Cunard Line, 943 F.2d 1056, 1064 (9th Cir. 1991) (An arbitrator in his power may also include an award of attorney fees for improper conduct during the arbitration process which

E.     No Grounds Exist to Vacate or Modify under Manifest Disregard of the Law

    **1.     The Award was not in manifest disregard of law – CPLR has "reason to believe test" for restricting funds**

Petitioners' remaining arguments raise, at most, the question of whether the arbitration Panel acted in manifest disregard of the law.  As stated above, the court's review of manifest disregard is "highly deferential to the arbitrators, and relief on such a claim is therefore rare." STMicroelectronics, N.V. at 78.  A court will not vacate an award because of "a simple error in law or a failure by the arbitrators to understand or apply it" but only when a party clearly demonstrates "that the panel intentionally defied the law." Id.

As their initial basis for manifest disregard of the law, Petitioners argue that Fidelity had no legal basis to restrain Indii's funds because the "good faith" standard applied only in a contempt action.  This conclusion is misguided.  First, it requires that the opinions of Petitioners' "expert," Professor Carlson, be accepted as the binding statement of law despite the fact that Professor Carlson and his opinions were discredited and debunked on cross examination. Beyond that, New York law actually *requires* that a person served with a restraining notice restrain "[a]ll property in which the judgment debtor or obligor is known or *believed to have an interest then in* and thereafter coming into the possession or custody of such a person, including any specified in the notice, and all debts of such a person, including any specified in the notice, then due and thereafter coming due to the judgment debtor or obligor[.]"  CPLR 5222(b) (emphasis added).  "[A] restraining notice serves as a type of injunction prohibiting the transfer of the judgment debtor's property." Aspen Indus., Inc. v. Marine Midland Bank, 52 N.Y.2d 575, 579 (1981).  A garnishee has a legal duty to obey a restraining notice and "*has no discretion in deciding whether to honor the notice* and may be held liable for damages to a judgment

---

results in unwarranted delay of the arbitration proceeding); See also Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 44 L. Ed. 2d 141, 95 S. Ct. 1612 (1975) (A bad faith exception to the "American Rule" is recognized in federal courts).

creditor…for not complying with the notice." Fidelity Brokerage Servs. LLC v. Bank of China, 192 F. Supp. 2d 173, 180 (S.D.N.Y. 2002) (emphasis added).

Fidelity had reason to believe Caro had an interest in the funds held in the Indii Account and the facts which came to light thereafter only reinforced the correctness of that position. Both the Caro Account and the Indii Account listed Caro's contact information. The Indii Account application showed that Caro is the president of Indii, held a 60% interest in Indii, was the "Primary Authorized Person" on the Indii Account and was its only signatory. (Shannon Affidavit ¶ 5.) It was *reasonable* for Fidelity to believe Caro "had an interest" in the Indii Account and therefore Fidelity may not be held liable to Claimants for complying with the restraining notice. See Schulman v. North Fork Bank, No. 116595/07, 2009 N.Y. Misc. LEXIS 4597, at *4 (Sup. Ct. New York Co. Mar. 6, 2009) (the test for determining whether a garnishee complied with a restraining notice is one of reasonableness).

Moreover, Fidelity's restraint on the Indii Account was proper because Caro clearly did have an interest in those funds. It was almost all his money and the mounting evidence just reinforced Fidelity's belief. Despite his financial affidavit that attempted to deny his ownership of Indii or even disclose the $700,000 loan receivable from Indii, in February and April 2010, Caro had in fact transferred nearly all of the assets from his personal account to the Indii Account. (Shannon Affidavit ¶ 6.) Again despite his denial of ownership in his financial affidavit, when it came to claiming losses on his tax returns he listed his interest as greater than 95% (Shannon Affidavit ¶ 23). As Fidelity had reason to believe Caro had an interest in the funds in the account and Fidelity's restraint was therefore proper, the award cannot be in manifest disregard of the law.

16

**2.    The Second Restraining Notice was properly issued – leave to serve it was granted**

As their next basis for manifest disregard of the law, Petitioners assert that New York law does not permit an attorney to serve a second restraining notice against the same person with respect to the same judgment without leave of court.  This entire argument is a repeated attempt to mislead the Court – just as Petitioners tried to mislead the Panel.

On August 26, 2010, the parties and/or their counsel to the New York State Court Action appeared before New York Supreme Court Justice Gische to address the issue of the continuation of the restraint on the Indii accounts.   During this hearing, the Court stated that Rothfarb's counsel could serve a second restraining notice of Fidelity (which Rothfarb's counsel said he had with him) and counsel immediately served Fidelity with a new Restraining Notice directing Fidelity to restrain the "Indii" account.  (Shannon Affidavit ¶ 11.)  Thus, the second Restraining Notice was served with Justice Gische's knowledge and at her direction and a copy was given to Petitioners' counsel.  Fidelity lawfully continued to restrain the Indii account pursuant to CPLR § 5222.

Petitioners' argument that the Second Restraining Notice was invalid because it was not "duly issued" or otherwise served without leave of court is belied by the transcript of the state court proceeding, which explicitly shows that the Court directed that it be served – "serve it on them." (See Exhibit 11 to the Shannon Affidavit, pg. 11.)  Indeed, the Panel took note of the fact that Petitioners and their expert Professor Carlson tried to mislead the Panel by skipping over this portion of the transcript of the proceedings before Justice Gische.  (See Exhibit 11 to Shannon Affidavit.)

17

3.   **The Award was consistent with the parties' arbitration agreement – Fidelity was not bound to arbitrate the interpleader claim**

Petitioners claim that the Panel disregarded the language of the arbitration clause of the account agreement and/or the law by denying Petitioners' claim that Fidelity was barred from filing the federal interpleader action. This claim is misplaced in that the interpleader action[12] concerned the *res* of the account proceeds, was a claim brought against persons not bound to arbitrate and who had claims against the funds in the account, and the Panel was presented with case law which held that pursuing an interpleader was *not* a breach of an agreement to arbitrate. See Tittle v. Enron Corp. (In re Enron Corp. Sec. Derivative & ERISA Litig.), 463 F.3d 410, 423 (5th Cir. 2006) (holding that, because the only dispute was among the insured parties over the proper allocation of the interpleaded funds, and because the scope of the Arbitration Clause did not encompass such a dispute, the district court properly denied Plaintiffs' motion to compel arbitration under the FAA)[13]; Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Whitney, No. 09-CV-78-GKF-PJC, 2009 U.S. Dist. LEXIS 59101, at *13 (N.D. Okla. July 10, 2009) (denying motion to compel arbitration with respect to claim for interpleader).[14]

Here, the interpleader action involved a dispute between Rothfarb and Petitioners regarding their conflicting claims to the assets in the Indii Account. By filing its interpleader complaint and depositing the Indii Account funds with the interpleader court, Fidelity effectively removed itself from any dispute by conceding that it had no stake in the funds and remaining

---

[12] As discussed above, Fidelity filed this interpleader because it was caught in the crosshairs of a very contentious dispute over the funds held in the Indii account.

[13] While this case law was specifically brought to the Panel's attention (Shannon Affidavit ¶ 25, Exhibit 31), Petitioners on the other hand cited no authority, and still cite no authority, to the contrary. In other words, Petitioners assert that the Panel failed to follow some contrary law never presented to it.

[14] In Whitney, Merrill Lynch argued that its interpleader claim (seeking to interplead three accounts to which the beneficiaries lay claim) was not subject to the arbitration agreement because it merely sought to interplead funds whose ownership was disputed between the beneficiaries and involved no "controversy" as contemplated by the Client Relationship Agreement. While noting that underlying disputes between Merrill Lynch and the beneficiaries must be arbitrated pursuant to the Client Relationship Agreements, the court concluded that interpleader of the funds in the accounts disputed among and between the beneficiaries was appropriate.

18

neutral as to the proper distribution of the funds. "This conclusion is consistent with the purpose of interpleader as a procedural device: to shield a stakeholder...from liability when faced with the threat of multiple inconsistent claims to a single fund by allowing the stakeholder to tender that fund to the court in lieu of defending against multiple possible lawsuits." Tittle at 423. For this reason, allowing a separate claim (in arbitration or otherwise) seeking to impose liability upon Fidelity would not only be contrary to the parties' contractual agreement, which only applies to "controversies that may arise *between* [Petitioners and Fidelity], but to the very "shield" of protection given to the interpleader plaintiff.

There can be no question that Fidelity properly brought the interpleader action because the interpleader court granted Fidelity interpleader relief. Furthermore, in their response to Fidelity's application for fees and costs in the interpleader action, Petitioners specifically acknowledged that "Fidelity had the right to bring the interpleader action in federal court[.]" (Shannon Affidavit ¶ 13.) Therefore, Petitioners should now be estopped from arguing the opposite. See DeRosa v. Nat'l Envelope Corp., 595 F.3d 99, 103 (2d Cir. 2010); Prudential Home Mortg. Co., Inc. v. Neildan Constr. Corp., 618 N.Y.S.2d 108, 110 (2nd Dep't 1994) ("judicial estoppel or the doctrine of inconsistent positions" applies to preclude a party who assumed a certain position in a prior legal proceeding from assuming a contrary position in a subsequent action).

## POINT II. FIDELITY'S CROSS-MOTION TO CONFIRM THE ARBITRATION AWARD SHOULD BE GRANTED

For the reasons stated above, Petitioners have failed to make a case for vacating the Award and, thus, have not established a valid defense to confirmation and enforcement of the Award. As noted by the Second Circuit, "an arbitration award should be confirmed unless it is vacated, modified, or corrected." D.H. Blair & Co. at 110; Digitelcom, LTD. v. Tele2 Sverige

19

AB, No. 12 Civ. 3082 (RJS), 2012 U.S. Dist. LEXIS 105896, at *17 (S.D.N.Y. July 25, 2012) ("Due to the parallel natures of a motion to vacate and a motion to confirm an arbitration award, denying the former implies granting the latter").

Typically, "confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court...." D.H. Blair & Co. at 110. A court's review of an arbitration award is "severely limited" and is "highly deferential" to the arbitrators because a more detailed judicial review of awards would frustrate the purpose of arbitration as an alternative to litigation. See STMicroelectronics, N.V. at 78; See also Telenor Mobile Commc'ns AS v. Storm LLC, No. 07 Civ. 6929 (GEL), 2007 WL 3274699, at *8 (S.D.N.Y. Nov. 2, 2007) (quoting Folkways Music Publishers, Inc. at 111 (in order to ensure that "the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation" are met, arbitration awards are subject only to "very limited review")). "Only a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award...[t]he showing required to avoid summary confirmation is very high." Id.

It is undisputed that Petitioners agreed to arbitrate this dispute before FINRA, that they accepted the Chairperson and Panel to rule over the proceedings, that Petitioners participated in discovery and discovery motions, pre-hearing conferences, pre-hearing briefing, and throughout the final in-person evidentiary hearing, which took place at FINRA's offices in New York, New York on March 13, 14, 15 and 28, 2012. During the final hearing, Petitioners gave an opening statement, called and presented five witnesses, introduced voluminous exhibits, and made a closing argument. The Panel of three arbitrators heard testimony, reviewed documents, and otherwise considered the evidence and arguments submitted by the parties. The Panel came to a decision, and duly made an award in writing (signed and acknowledged by all of the arbitrators)

on or about April 24, 2012 (Exhibit 2 to the Complaint).  Now – dissatisfied with the Award – Petitioners come to this Court for relief.  However, they have not successfully presented a single ground on which the Award may be vacated.

For these reasons and those set forth in detail in Point I above, Fidelity's cross-motion to confirm the award should be granted.  Accordingly, Fidelity respectfully requests an Order pursuant to Section 9 of the FAA (9 U.S.C. § 9) confirming the Award entered by FINRA in Fidelity's favor and against Petitioners Caro and Indii on April 24, 2012, entering judgment on the Award, and for such other relief as the Court deems just and proper.

## **CONCLUSION**

As demonstrated above, none of the grounds set forth in Petitioners' Complaint come close to showing that there is any basis for vacating or modifying an arbitration award (whether under the non-statutory manifest disregard grounds or pursuant to 9 U.S.C. § 10).  Petitioners' arguments are both legally and factually insufficient.  For all of the foregoing reasons and principles of law, Respondent Fidelity respectfully requests that the Complaint and Petition to vacate or modify the arbitration award issued by a FINRA arbitration Panel on April 24, 2012, be denied in its entirety and that Fidelity's Cross-Motion to Confirm the aforesaid award be granted in all respects, together with such other, further and different relief as to the Court seems just and proper.

A/75190678.3

Dated:      October 1, 2012                    Respectfully Submitted,
            Hartford, Connecticut
                                               RESPONDENT,
                                               FIDELITY BROKERAGE SERVICES LLC

                                               By:_____
                                               Michael D. Blanchard [ct25691]
                                               BINGHAM McCUTCHEN LLP
                                               One State Street
                                               Hartford, CT 06103-3178
                                               Phone: (860) 240-2945
                                               Fax: (860) 240-2586
                                               michael.blanchard@bingham.com

                                               and

                                               Michael G. Shannon (*pro hac vice* pending)
                                               THOMPSON HINE LLP
                                               335 Madison Avenue – 12th Floor
                                               New York, NY  10017-4611
                                               Phone: (212) 344-5680
                                               Fax: (212) 344-6101
                                               Michael.Shannon@thompsonhine.com

A/75190678.1

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been filed with the court this 1st day of

October, 2012, and will be served via overnight Federal Express to the following:

Marshall Caro
47 Angelus Drive
Greenwich, CT 06831
*(pro se* Plaintiff)

Marshall Caro
Indii.com USE, LLC
47 Angelus Drive
Greenwich, CT 06831
*(pro se* Plaintiff)

Michael D. Blanchard

23