# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

MARSHALL CARO and INDII.com USE,
LLC

               Petitioners,

   v.

FIDELITY BROKERAGE SERVICES, LLC,

          Respondent.

3:12-CV-01066 (CSH)

## RULING ON CROSS-MOTIONS TO VACATE AND
## CONFIRM ARBITRATION AWARD

**HAIGHT**, Senior District Judge:

In this action brought under the Federal Arbitration Act, 9 U.S.C. § 9 *et seq.*, the parties move and cross-move to vacate or to confirm an arbitration award.

Petitioners Marshall Caro and Indii.com USE, LLC move to vacate an arbitration award rendered by a Financial Industry Regulatory Authority ("FINRA") arbitration panel in favor of Respondent Fidelity Brokerage Services, LLC ("Fidelity") and against Petitioners.[1]  During the arbitration proceeding in question, Marshall Caro appeared *pro se* on his own behalf, and also

---

[1]Petitioners have captioned their request for vacatur as a "Complaint and Petition." [Doc. 1]. Although "[a] party seeking vacatur [of an arbitration award] must proceed by motion to the court," rather than by filing a complaint, *Kruse v. Sands Brothers & Co., Ltd.,* 226 F.Supp.2d 484, 485–86 (S.D.N.Y.2002) (citing 9 U.S.C. § 6), the Court will excuse this procedural deficiency. *See Blue Circle Atl. Inc. v. Independent Workers of N. Am., Local 429,* No. 90 cv 0410 (TJM), 1990 WL 120948, at *2 (N.D.N.Y. Aug. 16, 1990) ("In this case, we will treat the Defendant's motion to dismiss the Plaintiff's complaint as a motion to confirm Arbitrator Garrett's award, and the Plaintiff's opposition as a motion to vacate said award.").  *See Lobaito v. Chase Bank,* No. 11 cv 6883 (PGG), 2012 WL 3104926 (S.D.N.Y. July 31, 2012) *aff'd,* 529 F. App'x 100 (2d Cir. 2013) (citing same).

undertook to represent the interests of Indii, an entity he controlled.[2]  Fidelity moves to confirm the award.  This Ruling resolves the parties' cross-motions.

## I.  BACKGROUND

This action involves disputed claims to two Fidelity brokerage accounts established by the Petitioners.  One account was opened in March 2000 in the name of Marshall Caro; the other account was opened in February 2010 in the name of Indii (collectively, "Petitioner Accounts").  Caro owned a majority interest in Indii, and was listed on the Indii account papers as its president and the "primary authorized person" to transact business on the Indii account. [Doc. 1-3], Ex. 6 at 4.  Shortly after opening the Indii account, Caro transferred over $700,000 in assets from his personal account to the Indii account.  [Doc. 13-3].  Each account agreement between Petitioners and Fidelity provided that any disputes arising between the parties would be resolved by way of arbitration. [Doc. 35-4], Ex. 1 at 13.

Some fifteen years before Caro established the Indii account, a judgment ("Judgment") was entered against him in a New York civil action entitled *Rothfarb v. Programit*, *Inc*. *et al*, Index No. 19178/87 (N.Y. Sup. Ct., N.Y. County) ("New York Action").  The facts of that case need not be recounted here, except to say that the court ordered Caro to pay $204,018.23 to William Rothfarb, a former business associate.  Caro had not paid the Judgment, and by the latter half of 2010 it had accrued interest such that the total unpaid balance was in excess of $490,000.00.

On or about July 16, 2010, Fidelity received a letter from Rothfarb's attorney informing

---

[2]Although Mr. Caro may represent himself *pro se*, a question arises as to whether Indii, an LLC, must be represented by counsel.  Because the Court determines that Caro's petition to vacate is properly before this Court, the Court does not undertake to consider whether Indii must be represented by counsel.

Fidelity of the New York Action and Judgment.  Enclosed with the letter were copies of a Restraining Notice and Information Subpoena directing Fidelity to promptly restrain property in Fidelity's custody in which Caro had an interest.  Fidelity subsequently restricted and made inaccessible both the Caro account and the Indii account, and sent a notice of the restraint on the accounts to Caro.  Thereafter, Fidelity informed Rothfarb that it had determined that the Indii account might be exempt from the Restraining Notice, and indicated that it would remove the restraint from the Indii account not later than August 5, 2010, unless it received a court order, restraining order, or other process from a court of competent jurisdiction that directed otherwise. [Doc. 1-3] Ex. 6 at 5; [Doc. 13-8] Ex. 8 at ¶ 13.

Rothfarb responded by threatening Fidelity with contempt proceedings if it did not continue to restrain the Indii account.  [Doc. 13-8] Ex. 8 at ¶¶ 15-16.  Conversely, Petitioners informed Fidelity that the Indii account was not subject to restraint and demanded that Fidelity lift the restraint on the Indii account.  [*Id.*] at ¶¶ 14, 17.  Finding itself unable to determine which of the parties were entitled to the assets of the Indii account, Fidelity commenced on August 4, 2010, an interpleader action in the United States District Court for the Southern District of New York, naming Caro, Indii and Rothfarb as respondents.  Fidelity sought by filing the interpleader action to tender the proceeds of the Indii account to that federal court, and have the court determine the competing claims of Caro, Indii and Rothfarb.  [*Id.*] at  ¶ 19.

On August 4, 2010, Rothfarb obtained a temporary restraining order from New York State Supreme Court prohibiting Fidelity from lifting the restraint on the Indii account until an Order to Show Cause hearing could be held in that court on August 26, 2010, to determine whether the court would permanently enjoin Fidelity from lifting the restraint.  [Doc. 1-3] Ex. 7.  Rothfarb sought this

court order restraining the Indii account because Fidelity had indicated to Rothfarb that it would remove the restraint on the Indii account not later than August 5, 2010, unless it received a court order directing it to restrain the Indii account.  [Doc. 1-3] Ex. 6 at 5; [Doc. 13-8] Ex. 8 at ¶ 13. During the Order to Show Cause hearing, at which counsel for Caro was also present, the court concluded that it did not have authority to grant a preliminary injunction since the parties' rights to the Indii account would be determined ultimately in federal court, where the interpleader action had been filed.  Recognizing, however, that Fidelity had indicated it would lift the restraint on the Indii account unless it received a court order or other process directing otherwise, the court authorized Rothfarb to serve a second Restraining Notice ("Second Restraining Notice") directing Fidelity to restrain the Indii account.  Rothfarb served the Second Restraining Notice on Fidelity forthwith. [Doc. 1-3] Ex. 8 at 2-12.

On November 23, 2010, the federal district court granted, over Petitioners' objection, Fidelity's request for interpleader relief.  [Doc. 14-5] Ex. 14, at 6-8.  Accordingly, the court directed Fidelity to deposit the funds of the Petitioner Accounts into the court registry until such time as the Judgment amount was satisfied.  That same month, Caro and Indii paid the Judgment amount to Rothfarb.  [Doc. 1-3] Ex. 11 at 2.  On October 8, 2011, the court awarded Fidelity $41,538.48 for attorneys' fees and $293.01 for costs arising out of the interpleader action, and directed that the amount of each award be divided equally between Caro, Indii, and Rothfarb.  [Doc. 14-8] Ex. 17, at 7.

Up to this point in time, Petitioners, or Caro, individually, had been represented by counsel. Attorney Donna Drum initially represented Petitioners through written correspondences requesting that Fidelity lift the restraint on the Indii account, and subsequently appeared on behalf of Caro at

4

the Order to Show Cause hearing in New York State Supreme Court.  [Doc. 1-3] Ex. 6; Ex. 8 at 5-6; [Doc. 13-8] Ex. 8 at ¶ 17.  In papers filed in the arbitration, Petitioners alleged that Drum charged Petitioners, or Caro, $24,000 in attorneys' fees.  Petitioners were later represented by attorney Sheldon Eisenberger in connection with the interpleader proceedings in the federal court.  Petitioners claim that Eisenberger charged Petitioners, or Caro, $42,733.46 for his services.  [Doc. 1-1] Ex. at 2.

On January 23, 2011, shortly after Fidelity's request for interpleader was granted,  Petitioners filed against Fidelity an arbitration claim before a three-member panel of FINRA ("arbitration panel"). [Doc. 1-1] Ex. 2 at 4; [Doc. 15-1] Ex. 19.  Unlike the previous matters in connection with this case, Petitioners were not represented by counsel during the arbitration proceedings.  In their Statement of Claim (an arbitration document similar to a complaint), Petitioners alleged, *inter alia*, that Fidelity "creat[ed] the pretense of an ownership controversy over the Indii account," and "conspired with Rothfarb in an attempt to keep the account restraints in place until such time as Fidelity could obtain proper judicial sanction to seize Indii's Funds."  To this end, Petitioners claim that Fideility "accept[ed] a second, illegal restraining notice from Rothfarb" for the Indii account, until such time as Fidelity was "able to obtain an ex parte Order" from the federal district court to deposit the funds of the Indii account in the court registry.  The Petitioners claim that "[t]his was particularly outrages [sic] because Fidelity was contractually obligated . . . to bring all disputes to [an] arbitration forum and forego all lawsuits."  [Doc. 15-1] Ex. 19, at 7.  In addition to "punitive damages to punish Fidelity for [its] tortious behavior," the Petitioners sought, *inter alia*, to have Indii's "accounts restored in full," Caro to be reimbursed for "monies Caro paid to Rothfarb," and "compensatory damages and attorneys' fees" for both Caro and Indii.  [*Id.*] at 8.

Following a four day hearing, the arbitration panel denied Petitioners' claims in their entirety, awarded Fidelity $30,000 in attorneys' fees, and assessed all hearing session fees against Petitioners. [Doc. 1-1] Ex. 2, at 5-6. Thereafter, Petitioners filed the present action against Fidelity, petitioning the Court pursuant to Rule 10 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10 to vacate the award of the arbitration panel. Fidelity moved pursuant to Rule 9 of the FAA, 9 U.S.C. § 9, to confirm it.

## II.   STANDARD OF REVIEW

The FAA provides a "streamlined" process for a party seeking "a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it." *Hall Street Assocs. L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). "Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir.2006) (citation omitted). "Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Folkways Music Publishers v. Weiss*, 989 F.2d 108, 111 (2d Cir.1993).

"[D]istrict courts should . . . treat a petitioner's application to confirm or vacate an arbitral award as akin to a motion for summary judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 136 (2d Cir.2011) (citation omitted). "A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." *D.H. Blair & Co., Inc.*, 462 F.3d at 110. Specifically, the party moving to vacate an award bears "the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by

6

statute and case law." *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir.2004) (citation omitted).

The FAA enumerates four instances in which a court may vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made.

9 U.S.C. § 10.  In addition to the statutory grounds set forth in the FAA, the Second Circuit recognizes that a court may vacate an arbitration award rendered in "manifest disregard" of the law. *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S,* 333 F.3d 383, 388 (2d Cir. 2003).  To constitute manifest disregard of the law, the court must find that "the arbitrator knew of the relevant [legal] principle, appreciated that this principle controlled the outcome of the dispute case, and nonetheless willfully flouted the governing law by refusing to apply it."  *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 95 (2d Cir. 2008) *rev'd on other grounds*, 559 U.S. 662 (2010).  Awards are vacated on grounds of manifest disregard of the law only in those "exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent." *Duferco Int'l Steel Trading,* 333 F.3d at 389.

### III.   LEGAL DISCUSSION

In this case, Petitioner claims that the Court should vacate the arbitration award on grounds that the arbitration panel was biased against Caro and his expert, exceeded its powers in awarding

attorneys' fees, and were guilty of misconduct by committing certain evidentiary and procedural errors during the arbitration hearing.  Petitioners also claim that the arbitration award should be vacated because it is in manifest disregard of the law and the terms of the arbitration agreement.

The Court first addresses Petitioners claim that the arbitration award was in manifest disregard of the law, before considering whether the award should be vacated on statutory grounds.

A.      **Manifest Disregard of the Law**

Several of Petitioners' arguments in support of their petition are based on the contention that the Court should vacate the arbitration award on ground that it was rendered in manifest disregard of the law.

Petitioners first argue that the arbitration panel erred by not finding that Fidelity improperly restrained the Indii account.  The law that the arbitrators were bound not to disregard is found in the New York Civil Practice Law and Rules ("CPLR").  Section 5222(b) of the CPLR, pursuant to which the Restraining Notice was served by Rothfarb on Fidelity, required Fidelity to restrain "[all] property in which the judgment debtor or obligor [was] known or believed to have an interest." CPLR § 5222(b).  "A bank served with a restraining notice [pursuant to CPLR § 5222] has no discretion in deciding whether to honor that notice and may be held liable damages to a judgment creditor . . . for not complying with notice." *Fid. Brokerage Servs., LLC v. Bank of China*, 192 F. Supp. 2d 173, 180 (S.D.N.Y. 2002); *see also Sumitomo Shoji New York, Inc. v. Chem. Bank New York Trust Co.,* 47 Misc.2d 741, 263 N.Y.S.2d 354, 357-58 (N.Y.Sup.Ct.1965), *aff'd,* 25 A.D.2d 499, 267 N.Y.S.2d 477 (1st Dep't 1966) ( "[a] judgment creditor's specification of debt or property in a restraining notice [pursuant to CPLR § 5222] is binding on the person served . . . except pursuant to an order of the court").

Accordingly, Fidelity was bound by law to restrain all property in which it believed Caro had an interest. Fidelity's records indicated that Caro was the primary authorized person on the Indii account, and that he had transferred over $700,000 of his own assets into it. [Doc. 1-3], Ex. 6 at 4; [Doc. 13-3]. Fidelity could have reasonably believed that Caro had a personal interest in the Indii account, and as a result, acted in accordance with its obligations under the law by restraining the account. Therefore, the Court finds that the arbitration panel did not act in manifest disregard of the law by failing to find that Fidelity had improperly restrained the Indii account.

Petitioners next claim that the arbitration panel erred by not finding that the Second Restraining Notice was served without leave of court. Petitioners argue that at the Order to Show Cause hearing in New York Supreme Court on August 26, 2010, the court disclaimed jurisdiction over the dispute between the parties and refused to continue the restraint on the Indii account. Petitioner is correct to the extent he claims that the court determined it did not have authority to issue a preliminary injunction on the Indii account. Noting that the rights to the Indii account would ultimately be adjudicated in the federal district court where the interpleader action had been filed, the state court concluded that it did not have authority to issue a preliminary injunction.[3] [Doc. 1-3] Ex. 8 at 6-7. Although declining to issue a preliminary injunction, the court nevertheless authorized Rothfarb to serve a Second Restraining Notice on Fidelity. [*Id.*] at 11-12. Petitioners argue that the Second Restraining Notice was served without leave of court in contravention of CPLR § 5222(c),

---

[3]The court stated:

> You don't get a preliminary injunction unless you're looking for a permanent injunction or something else in this Court. If you are telling me you are going to Federal Court, I say okay, fine, you know, whatever a Federal Judge does they do. You cannot use me as a Band Aid until you get there. [Doc. 1-3] Ex. 8 at 6-7.

which requires leave of court "to serve more than one restraining notice upon the same person with respect to the same judgment or order." *Id*. The record, however, is clear that the court granted Rothfarb leave to serve the Second Restraining Notice. The court stated in reference to the Second Restraining Notice, "serve it on them and we're done," and concluded the hearing by reiterating that "the [first] restraint that is involved [will] lapse and [a] new restraint will be served." [Doc. 1-3] Ex. 8 at 12. The Court therefore concludes that the Second Restraining Notice was properly issued and that the arbitration panel did not act in manifest disregard of the law in failing to find otherwise.

Petitioners next claim that the arbitration panel erred by not finding that Fidelity breached the parties' agreement to arbitrate, which was set forth in each of its account agreements with Petitioners. Petitioners argue that Fidelity breached the arbitration agreement by bringing the interpleader action in district court against Petitioners and Rothfarb. Fidelity argues that the interpleader action did not violate the arbitration agreement because the interpleader action represented a dispute between Petitioners and Rothfarb, with Fidelity cast in the unwilling role of a stakeholder. Rothfarb was not a party to any arbitration agreement, either with Caro or Fidelity.[4]

Whether an agreement to arbitrate governs a particular dispute is essentially a matter of contract interpretation. *See Collins & Aikman Products Co. v. Building Sys.*, 58 F.3d 16, 19 (2d Cir.1995) ("Federal arbitration policy respects arbitration agreements as contracts that are

---

[4]Fidelity also argues that Petitioners are judicially estopped from asserting that the interpleader action violated the arbitration agreement because in response to Fidelity's application for fees and costs in connection with the interpleader action, Petitioners expressly stated, "Fidelity had the right to bring their interpleader action in federal court." [Doc. 14-6] Ex. 15 at 2. Although the Court agrees that Petitioners' inconsistent positions with respect to Fidelity's right to bring the interpleader action is curious, the Court cannot conclude that the doctrine of judicial estoppel applies under circumstances, as here, where the party asserting the inconsistent positions derived no benefit from asserting the inconsistent position in the prior proceedings. *See New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).

enforceable in the same was as any other contract."); *see also Orange Cnty. Choppers, Inc. v. Goen Technologies Corp.*, 374 F. Supp. 2d 372, 374 (S.D.N.Y. 2005). Principles of contract interpretation require that a contract be interpreted in a manner that ascribes meaning to all provisions of the contract. *See Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) ("an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible"); *Goodheart Clothing Co., Inc. v. Laura Goodman Enters., Inc.*, 962 F.2d 268, 272-73 (2d Cir. 1992) ("A court should interpret a contract in a way that ascribes meaning, if possible, to all of its terms." (citations omitted)).

The arbitration agreement between Fidelity and Petitioners is contained in the Fidelity "Customer Agreement." The Costumer Agreement describes the features, policies, fees, and risks associated with the customer's Fidelity account, includes a copy of Fidelity's fee schedule and other account related information, and also contains the contract between Fidelity and the customer. Doc. [35-4], Ex. 1. The arbitration provision of the contract states in relevant part:

> All controversies that may arise *between you and us* concerning any subject matter, issue or circumstance whatsoever . . . including, but not limited to, controversies concerning any account, order or transaction, or the continuation, performance, interpretation or breach of this or any other agreement *between you and us* . . . shall be determined by arbitration through [FINRA].

Doc. [35-4], Ex. 1 at 13 (emphasis added). On its face, the arbitration provision contemplates disputes arising between Fidelity and its customers and makes no explicit reference to disputes involving third parties. Nothing in the balance of the contract suggests that the arbitration provision should have a broader application to disputes other than those arising only between Fidelity and its customers. If anything, the title of the document in which the contract is contained, "Customer

11

Agreement," suggests that the contract should be interpreted narrowly as encompassing only those disputes arising between Fidelity and its customers.  The Court therefore finds that the arbitration agreement applied only to disputes between Fidelity and Petitioners.

In filing the interpleader action naming Rothfarb and Petitioners as defendants, Fidelity tendered the proceeds of the Indii account to the district court, and disclaimed any interest in the outcome of the dispute between Rothfarb and Petitioners.  The remaining controversy between Rothfarb and Petitioners, was not one that involved Fidelity.  Consequently, the arbitration agreement between Fidelity and Petitioners, which applies only to those "controversies that may arise *between* [Fidelity] and [the customer]," had no practical application in litigation in which Fidelity was not a party.  Doc. [35-4], Ex. 1 at 13 (emphasis added).  Because the arbitration agreement did not apply to a dispute between Petitioners and Rothfarb, Fidelity did not breach the arbitration agreement by bringing the interpleader action.

This conclusion is consistent with the Fifth Circuit's approach in *Title v. Enron Corp.*, 463 F.3d 410 (5th Cir.2006), upon which Fidelity relies.  In that a case, an insurer, faced with the possibility of competing claims from its policy holders, filed an interpleader action tendering the proceeds of the policy to the district court, and leaving the court to decide the proper distribution of funds amongst the policy holders.  The court held that the arbitration agreement between the insurer and its policy holders did not apply to the interpleader action because the arbitration clause contemplated only disputes between the insurer and its policy holders, and that there was no dispute involving the insurer once it filed the interpleader action and tendered the proceeds of the policy to the court.  *Id.* at 416-417.

In the case at bar, this Court agrees with and adopts the Fifth Circuit's reasoning in *Enron,*

which is in accord with sound policy.  A holding that the arbitration agreement in this case applies to a dispute between Petitioners and Rothfarb would strain any reasonable interpretation of the contract between Fidelity on the one hand and Caro and Indii on the other.  In addition, broadening the application of the arbitration agreement to encompass such ancillary disputes would have the effect of denying Fidelity the benefits of the salutary safeguards of interpleader.  The purpose of interpleader is to protect a stakeholder from the vexation of multiple lawsuits and from the possibility of multiple liability that could result from inconsistent determinations in different courts. *See*, *e.g.*, *Ashton v. Josephine Bay Paul & C. Michael Paul Ford.*, *Inc.*, 915 F.2d 1065, 1068 (2d Cir.1990) (avoidance of being "subjected to inconsistent judgments in different fora"); *John v. Sotheby's, Inc.,* 141 F.R.D. 29, 33 (S.D.N.Y.1992) ("insulate a stakeholder from contradictory judgments and multiple liability"); Wright, Miller & Kane, 7 *Federal Practice & Procedure: Civil 2d* § 1702, at 495–96 (2d ed.1986) (interpleader is employed to reach an "effective determination of disputed questions with a consequent saving of trouble and expense for the parties.").  The arbitration agreement between Fidelity and Petitioners suggests nothing that could have precluded Fidelity from availing itself of the procedural and substantive protections of interpleader.  Accordingly, the Court concludes that the arbitration panel did not err in rejecting Petitioners' claim that Fidelity breached the arbitration agreement.

In total, there is nothing in Petitioners' claim that the arbitration panel acted in manifest disregard of the law that persuades the Court that vacatur of the arbitration award is warranted on that basis.

**B.    Evident Partiality of Arbitrators**

The Court next considers Petitioners' claims that the arbitration panel chairperson was biased

against Caro and his expert witness.  Petitioners allege that the chairperson "expressed considerable skepticism about . . . pro se litigants" and "dismissed the testimony of [Petitioners'] expert witness, David G. Carlson," a law school professor, by stating, "'I don't need a law professor to read the law to me.'"  [Doc. 1] at 5-6.  The Court construes Petitioners' allegations in this respect as an argument for vacatur based on the "evident partiality" of the arbitrators.

Section 10(a)(2) of the FAA allows a court to vacate an arbitration award "where there was evident partiality or corruption in the arbitrators, or either of them."  9 U.S.C. § 10.  "'Evident partiality' . . . will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration."  *Morelite Construction Corp. v. New York City District Carpenters Benefit Funds*, 748 F.2d 79, 84 (2d Cir. 1984).  A party therefore need not show "proof of actual bias," but must offer more than the mere "appearance of bias."  *Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.*, 492 F.3d 132, 137 (2d Cir. 2007).

The Court recognizes that Mr. Caro may have felt that the chairperson was biased toward him.  However, the chairperson's statement that he did not require an expert witness to "read the law to [him]," considered alongside Petitioners' general allegation that the chairperson "expressed considerable skepticism" toward *pro se* litigants, do not rise to the level of evident partiality within the meaning of governing authority.  In fact, Petitioners' allegations in this regard hardly support the appearance of bias; and they certainly do not, applying the standard articulated in *Morelite*, leave a reasonable person with no choice but to conclude that the arbitrator was partial to one party in the arbitration.  *Morelite Construction Corp.*, 748 F.2d at 84-85.

Courts have vacated arbitration awards under Section 10(a)(2) only in those instances where there was evidence that an arbitrator had an undisclosed interest or relationship with one of the

14

parties.  *See, e.g., Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 149

(1968) (arbitrators must "disclose to the parties any dealings that might create an impression of

possible bias"); *Applied Indus. Materials Corp.* 492 F.3d at 137 ("arbitrator who knows of a material

relationship with a party and fails to disclose it meets . . . 'evident partiality' standard'"); *Morelite*

*Construction Corp.* 748 F.2d at 84 (father-son relationship between arbitrator and officer of party

to arbitration rose to the level of evident partiality); *see also, Sanford Home for Adults* v. *Local 6*,

*IFHP*, 665 F. Supp. 312, 320 (S.D.N.Y. 1987) ("in evaluating the purported bias of an arbitrator, the

courts look at . . . the financial interest the arbitrator has in the proceedings . . . the directness of the

alleged relationship between the arbitrator and a party to the arbitration proceeding . . . and the

timing of the relationship with respect to the arbitration proceeding).  The specter of such an interest

or relationship is not alleged here, only Caro's *ipse dixit* that the chairperson's partiality altered the

outcome of the arbitration proceedings.  This, alone, does not satisfy Petitioners' burden of showing

evident partiality.  *See Thomas C. Baer, Inc. v. Architectural & Ornamental Iron Workers Local*

*Union No. 580 of Int'l Ass'n of Bridge Structural & Ornamental Iron Workers,* 813 F.2d 562, 564

(2d Cir. 1987) (appellant's claim that arbitrator "exhibited a pro-union bias" supported only by

appellant's claim that the arbitrator "found in favor of the Union" clearly did not satisfy appellant's

burden of showing partiality").  Without more, this Court cannot conclude that the award should be

vacated under Section 10(a)(2).

## C.    Failure to Postpone Hearing and Hear Evidence

Petitioners next claim, albeit without stating how they were prejudiced, that the arbitration

panel violated its own rules by substituting a chairperson the day before the hearing.  The Court

construes Petitioners' pleading liberally, as it is bound to do for *pro se* litigants, as intending to assert

that Petitioners believe they were prejudiced by the arbitration panel's failure to postpone the hearing in order to find a chairperson to which Petitioners did not object; or in the alternative, that the arbitration panel's failure to follow its rules constitutes a *per se* ground for vacatur.

Section 10(a)(3) of the FAA provides in part that a federal court may vacate an arbitration award "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown." The arbitration panel, however, is afforded great deference in making determinations of this sort. *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 19 (2d Cir.1997). When determining whether to vacate an arbitration award on these grounds, the court "examine[s] the facts and circumstances surrounding the arbitrator's refusal to grant an adjournment." *Allendale Nursing Home, Inc. v. Local 1115 Joint Bd.*, 377 F.Supp. 1208, 1213 (S.D.N.Y.1974); *Rai v. Barclays Capital Inc.*, 739 F.Supp.2d 364 (2010) (quoting same). In order to warrant vactur on these grounds, a moving party must "demonstrate that it was prejudiced by the denial of the adjournment request." *Storey v. Searle Blatt Ltd.*, 685 F. Supp. 80, 83 (S.D.N.Y.1988).

The record indicates that the day before the arbitration hearing, the parties were informed that an arbitrator had withdrawn from the case. Accordingly, the parties were given the option of authorizing FINRA to select a replacement arbitrator from an "extended list," or alternatively, postponing the hearing date. [Doc. 12] at ¶¶ 17-19; [Doc. 15-5]. The parties elected to go forward with the proceedings, and on the first day of the hearing both parties affirmatively consented to the appointment of the substitute chairperson. [Doc. 1-2]. There is no indication that the arbitration panel failed to follow its stated procedure in this respect, and thus no reasonable argument for vacatur on grounds that the arbitration panel did not follow its own rules. If Petitioners had an objection to substitution of this chairperson by virtue of his selection from a certain extended list,

16

or for any other reason, they were required to raise that objection at the beginning of the arbitration and request an adjournment of the proceedings at that time.  Having failed to do so, they are precluded at this stage from challenging the substitution of the chairperson.  *See AAOT Foreign Econ. Ass'n (VO) Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 139 F.3d 980, 982 (2d Cir. 1998) ("[T]he settled law of this circuit precludes attacks on the qualifications of arbitrators on grounds previously known but not raised until after an award has been rendered.").  Accordingly, Petitioners' allegation that the arbitration panel failed to follow its own rules in the substitution of an arbitrator is not grounds for vacatur.

Petitioners next claim that the arbitration panel is guilty of misconduct by deferring decision on certain discovery issues, and by refusing to hear additional evidence during the arbitration hearing.  Specifically, Petitioners allege that the arbitration panel erred by: not allowing Petitioners to call additional witnesses, including Fidelity's outside counsel; denying Petitioners the opportunity to voice objections; and ruling on outstanding discovery motions during the hearing, as opposed to before the proceedings.

Section 10(a)(3) of the FAA permits vacatur "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy."  9 U.S.C. § 10.  "Courts have interpreted section 10(a)(3) to mean that except where fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review."  *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d at 20.  This restricted review is in keeping with the great deference accorded to arbitration panels under the FAA.  *Id.* at 19.  Consequently, arbitrators are given deference in determining what evidence to hear, and are not required to admit into the record all the evidence proffered by the parties.  *See  Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d at 19-20.  In practice,

17

"[v]acatur is only permitted where the arbitrator's exclusion of evidence prejudices one of the parties." *Rai v. Barclays Capital Inc*., 739 F.Supp.2d at 372 (quotation marks omitted).

Petitioners claim that the arbitration panel should have permitted them to produce as witnesses Fidelity's outside counsel. Petitioners, however, fail to indicate how they were prejudiced by preclusion of this testimony, or even suggest what evidence they would have been able to adduce from Fidelity's counsel in support of their claims. They offer only that Fidelity's counsel "participated in the decisions to breach the account agreement by filing the interpleader action." [Doc. 1] at 6-7. Were Petitioners' purpose to establish that Fidelity's counsel participated in a conspiracy to breach the arbitration clause of Petitioners' contract with Fidelity, Petitioners needed only offer into evidence the public pleadings filed by counsel in the interpleader action on behalf of Fidelity. Evening assuming that Fidelity's counsel had testimony to offer in support of Petitioners' claims, there is no plausible scenario where such evidence would not be protected by the attorney client privilege or work product doctrine.

Petitioners other arguments for vacatur under section 10(a)(3) are also not supported by a showing of prejudice. For example, Petitioners argue that there were other witnesses they were not allowed to produce, but do not identify what these other witnesses would have offered in support of their claims. Likewise, Petitioners state that the arbitration panel "refused to permit [them] to voice objections," but fail to point to a single erroneous evidentiary ruling, or identify portions of the hearing record where their objections were peremptorily denied. Nor do Petitioners explain how the arbitration panel's decision to resolve discovery issues during the hearing prevented it from giving due consideration to the issues at stake. In fact, Petitioners do even identify a specific discovery ruling with which they take issue. In the absence of any showing of prejudice in these respects,

Petitioners have not met their burden of establishing that vactur of the award is warranted under section 10(a)(3).

On balance, there is nothing in the arbitration panel's handling of the evidentiary issues over the course of its four day hearing on this matter that lends to the conclusion that the arbitration panel violated any measure of fundamental fairness within the meaning of judicial review under section 10(a)(3). In presenting their case, Petitioners were given ample opportunity to examine five witnesses in total, including Caro himself, two expert witnesses who testified regarding liability and damages, and two Fidelity employees who were involved in the decision to restrain the Indii account. [Doc. 1-2]; [Doc. 12] at ¶ 21. Petitioners also submitted numerous exhibits including: Fidelity's records of internal communications; Caro and Indii's Fidelity account agreements; the Indii LLC Agreement; certain correspondences between Rothfarb, Fidelity and Caro; transcripts, pleadings and judicial opinions from related court proceedings in state and federal court; subpoenas; and all manner of other documents Petitioners thought relevant to their claims. [Doc. 12] at ¶ 22; [Doc. 15] at 8. The arbitration panel expressly acknowledged that each of its members read the pleadings and other materials filed by the parties. [Doc. 1-1] Ex. 2 at 5. There is simply no basis in the record of the arbitration proceedings to conclude that any single evidentiary ruling was improvidently rendered or that Petitioners did not receive a fair hearing. Accordingly, there is no grounds to vacate the award under section 10(a)(3).

## D.   Arbitrators Exceeded their Powers

The arbitration panel awarded the sum of $30,000 for attorneys' fees to Fidelity and against Petitioners. Petitioners claim that the arbitrators exceeded their powers in doing so, and that the award cannot stand. Petitioners contend that the arbitrators' award of attorney's fees *to Fidelity* did

19

not fall within the scope of the arbitration panel's authority because *Petitioners*, appearing through Caro *pro se*, neither sought nor incurred attorneys' fees in connection with the arbitration proceeding.

Section 10(a)(4) provides for vacatur "where the arbitrators exceeded their powers." The question under this provision is "whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 694 (2010) (internal quotation marks omitted). "[T]he scope of authority of arbitrators generally depends on the intention of the parties to an arbitration and is determined by the agreement or submission." *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir.1987). An arbitrator has the authority to award attorneys' fees if the parties' agreement to arbitrate grants such authority. *Synergy Gas Co. v. Sasso*, 853 F.2d 59, 64-65 (2d Cir.1988); *First Interregional Equity Corp. v. Haughton*, 842 F. Supp. 105, 112 (S.D.N.Y. 1994). Because the traditional American Rule dictates that attorneys' fees are generally not awarded, it is the burden of the party seeking attorneys' fees, in this case Fidelity, to demonstrate that the arbitrator had the authority to award those fees. *Sammi Line Co. v. Altamar Navegacion S.A.*, 605 F. Supp. 72, 73-74 (S.D.N.Y. 1985); *Silvester Tafuro Design, Inc. v. Sachs*, No. 96 cv 1271 (DC), 1996 WL 257668, *4 (S.D.N.Y. May 16, 1996) (citing same).

Paragraph 2 of the Award, which deals with attorneys' fees, states in its entirety:

> Claimants [Caro and Indii] are jointly and severally liable for and shall pay to Respondent attorneys' fees in the amount of $30,000. The Panel awarded attorney's fees pursuant to both parties' request for attorneys' fees in their pleadings, during the hearing, and in their post hearing submissions.

Having carefully considered the record in the arbitration proceeding, I conclude without difficulty that the basic premise underlying the arbitrators' award of attorneys' fees to Fidelity is flawed. In

20

consequence, the arbitrators exceeded their powers in making that award, and the Court will vacate it.

To sustain an attorneys' fee award in its favor, Fidelity must prove by a preponderance of the evidence that Caro and Indii entered into a binding agreement to pay Fidelity's attorneys' fees if (as it happened) Fidelity won the arbitration and Caro and Indii lost it.  The arbitrators, in awarding $30,000 in attorneys' fees to Fidelity, recognized that they needed to identify conduct or declarations by Caro and Indii from which those parties' agreement to pay Fidelity's fees could reasonably be inferred.  That necessity accounts for the arbitrators' purported explanation in the award, that they "awarded attorneys' fees pursuant to both parties' request for attorneys' fees in their pleadings, during the hearing, and in their post hearing submissions." [Doc. 1-1], Ex. 2 at 5.

The arbitrators' reasoning justifies their award if, but only if, Caro and Indii requested attorneys' fees *incurred during the arbitration proceeding*, from which request, according to the arbitrators, the Claimants' agreement to pay Fidelity's attorneys' fees *incurred during the arbitration proceeding* could be inferred.  But the reasoning breaks down if the references Caro and Indii made to "attorneys' fees" related solely to fees they incurred during the earlier state and federal court proceedings initiated by Fidelity, which Caro and Indii included in their affirmative claims against Fidelity in the arbitration.  If those are the attorneys' fees that formed the subject matter of the Claimants' "request for attorneys' fees," the request has nothing to do with an agreement to pay the Respondent's attorneys' fees if the arbitrators' award rejected Claimants' claims (as it did).  The fact that Fidelity, in its pleading and submissions to the arbitrators, claimed attorneys' fees incurred during the arbitration is of no moment.  Clearly it is inadequate, standing alone, to sustain the award of attorneys' fees against the Claimants.  To be liable for such an award, Claimants had to agree in

21

advance to pay the fees of the attorneys who represented Fidelity during the arbitration proceedings. Not only is there no evidence in the record that Caro and Indii made such an agreement, the evidence negates that proposition.

In making their award, the arbitrators did not quote, cite to, or identify the parties' requests for attorneys' fees "in their pleadings, during the hearing, and in their post hearing submissions." Presumably, the arbitrators had in mind the first Statement of Claim submitted by Caro and Indii [Doc. 15-1], which recounted in detail the state and federal court proceeding to which Fidelity had subjected them, and recited "Indii seeks compensatory damages and attorneys' fees" and "Caro seeks compensatory damages and attorneys' fees." The same claims are repeated in an Amended Statement of Claim. [Doc. 15-2].

There may be some ambiguity in these references to "attorneys' fees." The statements were apparently prepared by a layman. They do not specify or distinguish between attorneys' fees previously incurred during the earlier litigation, and attorneys' fees about to be incurred during the arbitration. The sensible reading is that Claimants had in mind only the former, particularly since Caro was preparing to represent the Claimants *pro se* in the arbitration, and would not incur any attorneys' fees. If this was all the record contained on the issue, it would be difficult to conclude that Fidelity has proved an agreement by Caro and Indii to pay Fidelity's attorneys' fees incurred during the arbitration. However, any ambiguity about what Claimants meant by the phrase "attorneys' fees' is dispelled by Caro's post-hearing affidavit [Doc. 1-1], dated April 5, 2012, which summarizes the claims of Caro and Indii in the arbitration. That affidavit recites in detail the actions in state court (restraining order) and federal court (interpleader), and then says:

8. Claimants' attorney fees are:

22

> (i)     Attorney Donna Drum, aggregating $40,905
> (ii)    Law firm of Sheldon Eisenberger $42,733.46
> (iii)   Counsel fees ordered by Judge Jones – $27,887.66

The arbitrators' award is dated April 24, 2012.

This post-hearing, pre-award submission makes it crystal clear that, in the context of this case, Caro intended the phrase "attorneys' fees" to mean fees he had paid in the pre-arbitration litigation, which he sought to recover from Fidelity in the arbitration.  It is manifestly unreasonable, bordering on the fanciful, for the arbitrators to construe this phrase as a request by Claimants for attorneys' fees incurred during the arbitration, or (more to the point) as an implicit agreement to pay Fidelity's attorneys' fees if Claimants lost the arbitration.  No other agreement by Claimants can be discerned in the record, and Fidelity recognizes there is none.  In its brief in this Court on these cross-motions, Fidelity defends the award of attorneys' fees in its favor by saying only that "in their Statement of Claim and Amended Statement of Claim," Caro and Indii "specifically requested attorneys' fees."  [Doc. 11] at 13.  The argument detaches the balloon of attorneys' fees from the realities of the case and it floats free, unencumbered by either fact or reason.  The arbitrators appear not to have noticed what was going on.

Nor is there any reasonable basis to conclude, as Fidelity suggests, that the attorneys' fees award was permissible because it reflects the arbitration panel's decision to sanction Petitioners for asserting frivolous claims.  While the FINRA Code authorizes the arbitration panel to "sanction a party for failure to comply with any provision in the Code," Fidelity does not identify any provision of the Code with which the Petitioners failed to comply, or, for that matter, establish that the arbitration panel even levied sanctions against Petitioners in the first place.  (Code of Arbitration Procedure for Industry Disputes Rule 12212).  In fact, the arbitration award suggests that the panel

affirmatively resolved *not* to levy sanctions against Petitioners.  The arbitration panel stated: "[a]ny and all relief not specifically addressed [in the award], including punitive and treble damages, is denied."  Doc. [1-1] Ex. 2 at 5.  Had the arbitration panel decided to sanction Petitioners, it was required, pursuant to its own rules, to "include [that] information in the award."  (FINRA Dispute Resolution Arbitrator's Guide February 2012 Edition at 53).  Having failed to do so, there is no reason to conclude that the arbitration panel awarded attorneys' fees in order to sanction Petitioners and that the attorneys' fees award was permissible on that basis.

For these reasons, the Court concludes that the arbitrators awarded Respondent Fidelity attorneys' fees against Petitioners Caro and Indii in the absence of any agreement by Petitioners to pay or be liable for such fees.  It follows that in making that award, the arbitrators exceeded their powers.  To that extent the award must be vacated.

## IV.  CONCLUSION

For the foregoing reasons, the Court disposes of this case as follows:

1.  The motion of Plaintiffs/Petitioners Marshall Caro and Indii.com USE, LLC to vacate the Award of Arbitrators dated April 24, 2012 is GRANTED IN PART AND DENIED IN PART.

2.  The cross-motion of Defendant/Respondent Fidelity Brokerage Services [Doc. 9] to confirm the said Award of Arbitrators is GRANTED IN PART AND DENIED IN PART.

3.  The consequence of these Rulings is that the portion of the Award of Arbitrators which awards $30,000 in attorneys' fees to Defendant/Respondent and against Plaintiffs/Petitioners is VACATED.  In all other respects, the Award of Arbitrators is CONFIRMED.

The Clerk is directed to close the file.  It is SO ORDERED.

Dated:  New Haven, Connecticut
        August 11, 2014

                                   /s/ *Charles S. Haight, Jr.*
                                   Charles S. Haight, Jr.
                                   Senior United States District Judge